EMMA JAIXEN, PLAINTIFF-APPELLEE, v. ROBERT HARGREAVES, DEFENDANT-APPELLEE (DISCONTINUED), AND TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted May 6, 1941—Decided October 20, 1941.

Before Brogan, Chief Justice, and Justices Case and Heher.

For the plaintiff-appellee, *Coult, Satz, Tomlinson & Morse* (*Joseph Coult* and *Joseph Coult, Jr.*, of counsel).

For the defendant-appellant, *Edward C. Pettit* (*William Huck, Jr.*, of counsel).

Brogan, Chief Justice. This is an appeal by the municipal defendant, Town of Bloomfield, from a judgment recovered by the plaintiff for personal injuries. The plaintiff was severely injured when the automobile in which she was riding, operated by her son-in-law, Robert Hargreaves, struck a declivity or "valley gutter" formed by the intersection of two streets in Bloomfield. The plaintiff's claim is, as stated in her pleading, that the said town "did actively create and did maintain in a negligent manner an obstruction or gully without proper guards or warning signs in the center of Park Street at its intersection with State Street whereby the automobile in which the plaintiff was riding was thrown violently about so as to cause the plaintiff to be injured about the body."

In support of the plaintiff's case it was proved that at the time of the injury, one highway, State Street, had "a very high crown" which continued across the intersection of Park Street. The two streets are almost at right angles, the former running north and south, the latter east and west. The car in which plaintiff was riding was proceeding easterly on Park Street when it struck that which is referred to as the "valley gutter" which ran along the curb line of State Street. The gutter in question was described as having a depth of seven inches.

The appellant contends that it was error on the part of the trial court to deny its motion for nonsuit at the close of the plaintiff's case and its motion for direction of verdict at the conclusion of the whole case because at neither juncture of the proceeding was there evidence to establish active wrong-

doing. The argument is that there was no evidence from which the jury could find that the valley gutter was a nuisance. It is also said that there was no proof that the municipality constructed the valley gutter. Now the appellant concedes that "any obstruction or erection in a public highway which interferes with the rights of a person lawfully passing thereon, amounts to a common or public nuisance for which a municipality is charged with responsibility, if it was an active agent or instrument in the creation of the perilous condition" (*Fredericks* v. *Dover,* 125 *N. J. L.* 288) ; but it is insisted that the municipality was not "an active agent or instrument in the creation of the perilous condition" here under consideration. In defense of this conclusion it is said that the valley gutter when built—some thirty years ago—was considered proper road construction. Valley gutters at that time were an accepted method to permit the running off of surface water. The contention therefore is that even with the advent of the automobile the municipality, even though it presently recognized the valley gutter as a danger to such rapid means of surface transportation, and because the gutter was an accepted method in aid of drainage when built, nevertheless was under no duty to correct this situation. We need not pause to consider this argument because the facts in the case show that in 1936 or 1937 some of the road surface on Park Street in this area was torn up and an eight inch water main laid along State Street "right down in the valley gutter." The valley at that time was filled up on both sides "so as not to make the valley so deep as it was." With this undisputed evidence in the case it becomes unimportant, in our view, who originally constructed the gutter or that it was constructed many years ago, in the light of the fact that in 1937, or thereabouts, the defendant installed a sewer in the gutter and reconstructed the gutter, which though made shallower nevertheless resulted in an indentation in the roadway (seven inches for eight feet) across the width of the road surface. The evidence also established the fact that the valley gutter was or should have been then recognized as a menace to the public. The defendant's expert witness said on cross-examination : "* * * a valley gutter is dangerous * * *

all of them are * * *." Thus it is clear that the testimony justified a finding that the valley gutter was reconstructed in 1936 or 1937; that its reconstruction was the act of the municipality; that it was negligence, affirmative in character, and in this situation a private action lies. There is therefore no substance to the point that there was no evidence from which the jury could find that the valley gutter was a nuisance.

Appellant in the argument leans heavily upon the case of *Robinson* v. *Ocean Township*, 123 *N. J. L.* 525. But in that case, as the opinion plainly states, there was no proof of design or construction of the gutter making it "dangerous to travel or use." Here from one of the defendant's witnesses Mr. Obreiter, we have testimony that all valley gutters "are dangerous to the traveling public." Manifestly he was talking about those of which he had knowledge including the valley gutter in question.

The remaining point to consider is directed to the court's charge to the jury as follows:

" 'The law is well settled that any obstruction or erection in a public highway, which interferes with the rights of a person lawfully passing thereon, amounts to a common or public nuisance, for which a municipality is charged with the responsibility, if there was an active agent or instrument in the creation of the perilous condition. * * * And it is equally well settled that an action lies against him who continues a nuisance created by another. One is liable for a nuisance on the ground, either that he has purposely or negligently created it, or that he continues it * * *.' "

This language in substance is from an opinion of our Court of Errors and Appeals in the case of *Fredericks* v. *Dover*, *supra*. The trial judge stated that he was about to read "what our highest court in the state has said in a very recent case decided last October in a situation very similar to this up in the Town of Dover where there was involved a storm gutter instead of a valley gutter." He then read the excerpt above quoted. When the charge was finished counsel for the appellant entered an exception "to that part of the charge indicating that the mere maintenance or continuance of a nuisance

creates liability on the part of the town." In reply the court said, "You are referring there to the citation of the Dover case?" to which counsel answered, "To the Dover case, yes."

It is a close question whether that which counsel now argues as his final point is that to which the exception was directed. Counsel does not make his argument on the excerpt which the court read from the opinion of Fredericks *v.* Dover but on something which the court said thereafter which was as follows: "So that it comes down to the question not simply of whether or not the town has created it (that would not determine it solely) but whether or not the town has created it or has continued it. And I think from the evidence there is no question but that it has done one or the other." The argument of the appellant seems to be that the continuance of the condition complained of in its original state, without more, did not make the town answerable in a private action at the instance of one who suffered injury. But this argument is, we think, too narrow because we are convinced the jury understood the trial judge to mean, as undoubtedly he did mean, that the jury was to consider whether the valley gutter was a nuisance for which the municipality might be answerable due to its reconstruction and continuance of the gutter at the time it laid a sewer pipe across the intersection. We find no harmful error in the charge under this point.

The judgment should be affirmed.